IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| SHAWN T. PETREY, MARK M. WILSON, ESQ., and WILSON LAW OFFICE, LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND ("Welfare Fund") by and through the law firm of MCGANN, KETTERMAN & RIOUX, LTD., complain of the Defendants, SHAWN T. PETREY, MARK M. WILSON, ESQ., and WILSON LAW OFFICE, LLC, and state as follows:

### NATURE OF THE CASE

1. This is an action to enforce the terms of the CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, (the "Welfare Fund") plan of benefits, including an equitable lien by agreement, imposition of a constructive trust, and for other equitable relief pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.

2. Further, pursuant to Illinois state law and the supplemental jurisdiction provided by 28 U.S. Code § 1367, this action seeks compensatory damages for Defendant's breach of the Welfare Fund Plan Document; or in the alternative, compensatory damages arising out of the

1

Welfare Fund's detrimental reliance on the Defendant's promise to reimburse the Welfare Fund.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1) and ERISA § 502(f), 29 U.S.C. § 1132(f) because the Plaintiffs seek equitable relief under Title I of ERISA. Further, this Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S. Code § 1367 because the state law claims form part of the same case or controversy as the federal claims.

## VENUE

4. Venue is proper in the Northern District of Illinois pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Welfare Fund's administrative offices are located in the Northern District of Illinois, because this District is where the threatened violation of ERISA will take place, and because the Defendant resides or may be found in this District.

## PARTIES

5. The Welfare Fund is a self-funded employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37). It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union and employer appointed trustees pursuant to the Taft-Harley Act § 302(c)(5), 29 U.S.C. § 186(c)(5). Plaintiffs are trustees and fiduciaries of the Welfare Fund, and, as such, are entitled to bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

6. Defendant SHAWN T. PETREY ("PETREY") is an individual that resides in Elmhurst, Illinois. At all times relevant to this action, Defendant PETREY has been a participant

of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and has been a Covered Individual under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

7. Defendant MARK M. WILSON, ESQ. is a licensed attorney and agent of Defendant WILSON LAW OFFICE, LLC, an Illinois limited liability corporation and law firm with offices located at 3808 Progress Blvd., Suite A, Peru, IL 61354. These defendants shall be hereinafter collectively referred to as "WILSON."

8. At all times relevant to this action, Defendant WILSON and/or agents/employees of these defendants, have represented PETREY in a claim for personal injuries sustained on May 17, 2020.

9. By virtue of their representation of PETREY, and their benefit obtained by the Welfare Fund's advancement of uncovered medical expenses related to the Injury, the WILSON defendants are also participants of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and are Covered Individuals under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

## RELEVANT PLAN PROVISIONS

10. Any health or welfare coverage extended by the Welfare Fund to participants is subject to the terms and conditions stated in the Plan Document. (**EXHIBIT 1 – Plan Document**).

11. Section 14.01 of the Plan Document establishes the terms and conditions of the Welfare Fund's rights to subrogation and reimbursement with respect to benefits paid on behalf of participants.

12. Section 14.01(A) of the Plan Document states:

The Fund provides no benefits for Claims of a Covered Individual that are related to any Illness or Injury which is caused by third parties or which is Work-Related or the responsibility of any other entity. The Fund will deny any Claim for an Illness or Injury which is caused by third parties, which is Work-Related or the responsibility of any other entity except as otherwise provided in this section.

13. Section 14.01(B) of the Plan Document states in relevant part:

If the Fund chooses to advance benefits for the Injuries and Illnesses cause by third parties or that are Work-Related or the responsibility of any other entity, a Covered Individual:

(1) Upon final adjudication, settlement and/or receipt of case proceeds, agrees to reimburse the Fund up to (i) the amount of benefits paid by this Fund or amounts that the Fund is obligated to pay… from any recovery received from any third party, insurer or any other source…

(3) Agrees to enter into a subrogation and reimbursement agreement that is given to the Covered Individual by the Fund, which Agreement the Fund may require before a Covered Individual can receive any advancement of benefits…. A Covered Individual must comply with all the terms of the subrogation and reimbursement agreement, including the establishment of a trust for the benefit of the Fund. In this regard, the Covered Individual agrees that out of any recovery he receives from any Source or Coverage…the identified amount that the Fund has Advanced or is obligated to Advance in benefits will be immediately deposited into a trust for the Fund's benefit and the Fund shall have an equitable lien by agreement in the amount set forth in this paragraph which shall be enforceable as part of an action to enforce the Plan terms under ERISA Section 503(a)(3), including injunctive action to ensure that these amounts are preserved and not disbursed;

(4) The Fund's equitable lien by agreement imposes a constructive trust upon the assets received as a result of a recovery by the Covered Individual, as opposed to the general assets of the Covered Individual, and enforcement of the equitable lien by agreement does not require that any of these particular assets received be traced to a specific account or other destination after they are received by the Covered Individual;

(5) The Agreement will grant the Fund a priority, first dollar security interest and a lien in any recovery received from any Source or from any Coverage, whether by suit, settlement or otherwise, whether there is a full or partial recovery and regardless of whether the amounts are characterized or described as payment for medical expenses or as amounts other than for medical expenses of such Illness or Injury;

4

(10) Agrees not to do anything that will waive, compromise, diminish, release or otherwise prejudice the Fund's reimbursement rights or subrogation rights;

(11) Agrees to notify and consult with the Fund or its designee in writing before starting any legal action or administrative proceeding against a Third Party alleged to be responsible for the Illness or Injury that resulted in the Advance, and before entering into any settlement agreement with that Third Party or Third Party's Insurer based on those allegations;

14. Section 14.01(C) of the Plan Document states in relevant part:

For purposes of this Plan Section 14.01, the term "Covered Individual" shall also include representatives, guardians, trustees, estate representatives, heirs, executors, administrators of special needs trusts and any other agents, persons or entities that may receive a benefit on behalf of or for Covered Individuals.

15. Section 14.01(D) of the Plan Document states in relevant part:

The Fund's subrogation and reimbursement rights and the Covered Individual's obligation set forth in this Plan Section 14.01 shall apply regardless whether the Covered Individual executes a subrogation and reimbursement agreement.

## FACTS COMMON TO ALL COUNTS

16. On May 17, 2020, PETREY was injured in a motor-vehicle accident. ("Injury").

17. Pursuant to Section 14.01 of the Plan Document, PETREY executed the Chicago Regional Council of Carpenters Welfare Fund Reimbursement Agreement for Third Party Causation ("Reimbursement Agreement") with the Welfare Fund to compel the Welfare Fund to advance uncovered benefits for medical expenses incurred as a result of the Injury. (**EXHIBIT 2 – Reimbursement Agreement**).

18. During the period of May 17, 2020 through on or about the present, PETREY received medical treatment to treat conditions suffered as a result of the Injury.

5

19. Because PETREY was a Covered Individual pursuant to the Plan Document, and because PETREY signed a Reimbursement Agreement, the Welfare Fund advanced these medical expenses in the amount of $38,212.85. These benefits took the form of payments made from the Welfare Fund's assets.

20. Beginning on or after May 17, 2020, the WILSON defendants and agents/employees of theirs represented PETREY in a claim seeking damages for personal injuries arising out of the Injury. ("Injury Claim").

21. On information and belief, Defendants obtained a settlement from the defendants in the Injury Claim in the amount of $50,000.

22. In clear violation of the Plan Document and Reimbursement Agreement, the Defendants failed to inform the Welfare Fund or its representative that PETREY had retained an attorney, failed to inform the Welfare Fund that they had initiated a claim, and failed to inform the Welfare Fund before settling the Injury Claim.

23. Defendants PETREY and WILSON have not fully reimbursed and actively seek not to fully reimburse the Welfare Fund from the proceeds of their $50,000 recovery from the Injury Claim in violation of the terms of the Plan Document. The Welfare Fund has therefore been damaged in an amount not less than $38,212.85.

24. Upon information and belief, the proceeds of a recovery from the Injury Claim are in possession or control of Defendant WILSON and/or WILSON's client trust account, have been disbursed to WILSON as an attorney's fee, or have been distributed to PETREY.

25. WILSON is required by the Illinois Rules of Professional Conduct to safeguard the property of third parties. Rule 1.15(d) of the Illinois Rules of Professional conduct states:

> Upon receiving funds or other property in which a client or third person
> has an interest, a lawyer shall promptly notify the client or third person.

> Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

26. Further, Rule 1.15(e) of the Illinois Rules of Professional Conduct states:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

## **COUNT I – EQUITABLE LIEN & CONSTRUCTIVE TRUST**

27. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count I to obtain appropriate equitable relief against the Defendants.

29. One or more of the Defendants is in possession of a specifically identifiable fund of $38,212.85 in the amount of the Welfare Fund's subrogation and reimbursement lien asserted on the settlement of $50,000.

30. Under section 14.01 of the Plan, the Welfare Fund has established an equitable lien in the identifiable amount of $38,212.85 against WILSON (to the extent that settlement funds subject to the lien are maintained in their client trust account or in an escrow account, or have been distributed to them as an attorney's fee) and/or PETREY (to the extent that settlement funds subject to the lien have been disbursed to them from WILSON or are being held for their benefit in a client trust account or escrow account).

31. The $50,000 held by one or more of the Defendants, and upon which the Welfare Fund is entitled to an equitable lien in the amount of $38,212.85, is to be held in constructive

7

trust to the extent of the Welfare Fund's lien by Defendants for the Welfare Fund.

32. Based upon the equitable lien and the constructive trust, the Defendants stand in a fiduciary relationship to the Welfare Fund with respect to the $38,212.85 value of such lien and trust, and the Defendants may not dispose of assets subject to that lien or violate fiduciary duties relating to those assets.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
   i. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;
   ii. Enforcement of the Plaintiffs' equitable lien in the identifiable amount of $38,212.85 (plus interest) against assets of $50,000 belonging to the Plaintiffs and held by the Defendants, as identified in this Complaint;
   iii. Enjoinment of the Defendants from disposing of any funds held in constructive trust for the Plaintiffs, until such time as the Plaintiffs' equitable lien has been satisfied in full;
b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' equitable lien has been satisfied in full;
c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and
d) Such further or different relief as this Court may deem proper and just.

## **COUNT II – BREACH OF PLAN**

### **(Subrogation/Reimbursement Lien & Constructive Trust)**

33. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count

II to enforce the terms of the Plan.

35. The Plan grants the Welfare Fund reimbursement and subrogation rights, and requires the repayment by any responsible party (including the Defendants) of medical and disability expenses paid by the Welfare Fund on behalf of a covered individual.

36. Thus, under the terms of the Plan, the Welfare Fund is entitled to reimbursement from the Defendants in the amount of $38,212.85 representing funds paid by the Welfare Fund on behalf of PETREY for medical and disability expenses incurred as a result of the Injury, before any settlement proceeds, including attorneys' fees, are paid to the Defendants.

37. To date, the Defendants have failed to pay any reimbursement to the Welfare Fund from the $50,000 settlement proceeds, and the full amount of the Welfare Fund's subrogation and reimbursement lien (i.e., $38,212.85) is unreimbursed.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
   i. An order enforcing the Plan and enjoining the Defendants from violating the Plaintiffs' subrogation and reimbursement rights as established by the Plan, including an order requiring reimbursement in the amount of the Plaintiffs' subrogation and reimbursement lien of $38,212.85 (plus interest);
   ii. Enjoinment of the Defendants from disposing of any settlement funds in the identifiable amount of $38,212.85 against assets of $50,000 held by the Defendants as described in this Complaint, until such time as the Plaintiffs' subrogation and reimbursement rights as established by the Plan have been satisfied in full;
   iii. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;
b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' subrogation and

reimbursement rights, as established by the Plan, have been satisfied in full;

c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

d) Such further or different relief as this Court may deem proper and just.

**COUNT III – BREACH OF CONTRACT or PROMISSORY ESTOPPEL (DAMAGES)**

38. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. Pursuant to the common law of Illinois, the Plaintiffs bring Count III to obtain compensatory damages against the Defendant PETREY for breach of the Plan Document and detrimental reliance on PETREY's unambiguous promise to reimburse the Welfare Fund.

40. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S. Code § 1367 because the state law claim forms part of the same case or controversy as the federal claims.

41. The Plan Document and Reimbursement Agreement is a valid enforceable contract between the Welfare Fund and PETREY.

42. PETREY made an unambiguous promise to the Welfare Fund to reimburse the Welfare Fund if the Welfare Fund advanced uncovered benefits on PETREY's behalf related to the Injury.

43. The Welfare Fund relied on PETREY's promise and performed its obligations under the Plan Document by advancing uncovered medical benefits on PETREY's behalf in reliance on PETREY's promise to abide by the terms of the Plan Document and reimburse the Welfare Fund upon receipt of proceeds related to the Injury.

44. The Welfare Fund's reliance was expected and foreseeable by PETREY, particularly because PETREY signed the Reimbursement Agreement which set forth the terms

under which the Welfare Fund would advance the benefits in the amount of $38,212.85.

45. The Welfare Fund relied on PETREY's promise to its detriment, as PETREY now seeks to deny the Welfare Fund reimbursement of the advance of benefits.

46. PETREY has breached his obligations under the Plan Document through the following conduct by, *inter alia*: failing to put the Welfare Fund on notice of retention of an attorney and initiation of the Injury Claim, failure to reimburse the Welfare Fund, and by seeking to deprive the Welfare Fund to its reimbursement interest in the amount of $38,212.85.

47. PETREY's breaches of the Plan Document have resulted in injury to the Welfare Fund in an amount not less than $38,212.85, and attorneys' fees and costs.

**WHEREFORE**, the Plaintiffs request the following relief:

a. A judgment against the Defendant PETREY and in favor of the Plaintiffs for $38,212.85 in compensatory damages;

b. That this Court retain jurisdiction to enforce the remedies sought by the Plaintiffs in this Complaint;

c. An award of attorneys' fees and costs; and

d. Such further or different relief as this Court may deem proper and just.

    Respectfully Submitted,
    TRUSTEES OF THE CHICAGO REGIONAL
    COUNCIL OF CARPENTERS WELFARE FUND

By: /s/ Daniel E. Quist
    One of Plaintiffs' Attorneys

    Daniel E. Quist (ARDC #6313773)
    McGann, Ketterman & Rioux, Ltd.
    111 E. Wacker Dr., Suite 2600
    Chicago, IL 60601

Date: November 12, 2021     (312) 251-9700; dquist@mkrlaborlaw.com